J-S61026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH R. W. | |
| Appellant | No. 456 WDA 2014 |

Appeal from the Judgment of Sentence of February 28, 2014
In the Court of Common Pleas of Warren County
Criminal Division at No.: CP-62-CR-0000048-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and STRASSBURGER, J.*

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 08, 2014**

Joseph R. W. ("Appellant") appeals his February 28, 2014 judgment of sentence.  In large part, we adopt the trial court's comprehensive Pa.R.A.P. 1925(a) opinion, and we affirm.

After the police received a report that Appellant had sexually abused his nine-year-old daughter, M.K., Appellant was charged with involuntary deviate sexual intercourse with a child, aggravated indecent assault, indecent assault, and incest.[1]  Initially, Appellant pleaded guilty to one count of aggravated indecent assault in exchange for the Commonwealth's

_____

*       Retired Senior Judge assigned to the Superior Court.

[1]      18 Pa.C.S. §§ 3123(b), 3125(a)(7), 3126(a)(7), and 4302, respectively.

agreement to *nolle prosse* the remaining charges. However, after being assessed by the Sexual Offender Assessment Board ("the Board") to determine whether he met the criteria for designation as a sexually violent predator ("SVP") pursuant to 42 Pa.C.S. § 9799.24(a) and (b), Appellant subsequently moved to withdraw his plea before sentencing, a motion which the trial court granted.

The matter then proceeded to a jury trial, after which Appellant was convicted of all charges. The trial court summarized the facts that the Commonwealth presented at trial against Appellant as follows:

> Detective Anthony Chimenti of the Warren Police Department responded to a report from the mother of the nine year-old female victim, M.K., around November of 2012. On numerous occasions between October, 2010 and October, 2011, Appellant, M.K.'s biological father, abused her at a duplex that her mother and Appellant shared in Warren, Pennsylvania. M.K. reported that Appellant touched her on her chest and between her legs, put his mouth on her 'chest and privates,' and touched her with his tongue on her 'privates.' Testimony at trial indicated that, during at least some of the episodes of abuse, Appellant removed the victim's clothes prior to abuse occurring. M.K. did not report the abuse because Appellant told her not to tell anybody about what happened, and M.K. first told her mother about the events following a move to Ludlow, Pennsylvania in October 2012. In the course of an interview with the police, Appellant admitted that he had touched M.K. while she was showering, and that the incidents involving touching had occurred in the bedroom he shared with the victim's mother. Appellant also admitted during interviews with police that while the victim was naked he would touch the victim on the breast and vagina, and he also admitted that on at least one occasion he used his tongue on the victim. Pennsylvania State Trooper Eric Mallory, who conducted the interview, testified at trial that slight penetration occurred during this incident, as Appellant admitted to rubbing the opening of the victim's vagina.

Trial Court Opinion ("T.C.O."), 5/5/2014, at 2.

On September 10, 2013, the trial court entered an order directing the Board to perform a second SVP assessment on Appellant. Molly Wagner, a clinical social worker and member of the Board, performed the assessment on Appellant. Notably, Appellant elected not to participate in the assessment, and did not speak with Ms. Wagner.

On February 28, 2014, the trial court held a hearing to ascertain whether Appellant met the criteria for an SVP designation. At the hearing, Ms. Wagner testified for the Commonwealth. Having reviewed all of the pertinent and available materials and information, Ms. Wagner opined within a reasonable degree of professional certainty that Appellant met the SVP criteria. Notes of Testimony ("N.T."), 2/28/2014, at 20. In response, Appellant presented the testimony of licensed psychologist Steven J. Reilly. Mr. Reilly testified that, in his expert opinion and within a reasonable degree of professional certainty, Appellant did not meet the relevant SVP criteria. N.T. at 36. The trial court, after hearing from and assessing the credibility of both experts, concluded that the Commonwealth had proven by clear and convincing evidence that Appellant was an SVP. On the record, the court comprehensively explained the basis for its conclusion:

> The court has considered the testimony by the two professionals in this matter. As [the assistant district attorney] stated, we have a member of [the Board] whose curriculum vitae indicates she exclusively works within sex offenders treatment as a director of the Sexual Offenders Approved Board Treatment in Warren, Venango, Crawford and Erie County. And in terms of her training, she has been a member of [the Board] since 2005.

That being said, we also have the information about Mr. Reilly who is a licensed or board certified psychologist. He administered the Static-99R and the Minnesota Sexual Offenders Screening Tool, both that are self-reports that [Appellant] participated in. Unlike Ms. Wagner's report where [Appellant] refused or [defense counsel] refused on his behalf, but he did not participate in that evaluation [*sic*].

It's clear to the Court there are two different reports from [the Board]. The one that, again, was only mentioned briefly was the former report based upon a plea which included one charge. After trial, [Appellant] was found guilty of four charges. So the information that would be included is different, because there are four charges that are up for consideration as opposed to the one when [Appellant] withdrew his plea.

In terms of the evaluation, we'll see what we agree upon. That is that both Mr. Reilly and Ms. Wagner testified that, in fact, [Appellant] is properly classified as someone with a diagnosis of pedophilia based on DSM criterion. Now, [] Mr. Reilly said he may not agree with the criterion, but he recognize[d] the criterion is one that is used, so he did not dispute the diagnosis.

In terms of the factors, it's clear that the factors were addressed in [the Board's] assessment. We already concluded that this offense involved one victim, namely [Appellant's] 9-year-old daughter.

The offender did not exceed the means necessary to achieve his offense, but that he did exploit a trusted paternal relationship and exceeded access to the child within the home.

The nature of the sexual contact with the victim included fondling, oral sex, digitally penetrating her vagina.

He was the father of the victim and lived with the family at the time of these incidents. The incidents occurred over a period of seven months. It was not one incident, it was not an isolated incident, it was a period of seven months.

The victim in this case is prepubescent. This age is relevant because, again, [Appellant] is classified with a diagnosis of pedophilia based upon his age.

Whether the offense included a display of unusual cruelty by the offender during the commission of the crime. There was

grooming and maintenance of sexual molestation so it could occur in the home over a period of time, it was not one event. Again, it appeared that he did not engage in cruelty of violence in the typical sense of removing the child from the home, kidnapping her, et cetera, were the examples, but he, in fact, did groom her, keep her separate from other members of the family.

Again, there was no indication by either Mr. Reilly or by Ms. Wagner that the mental capacity of the victim was anything other than a child.

The offender has no prior criminal record in the area of sexual offenses. He does have two prior charges for criminal mischief and violation of the Controlled Substances Act. He has never completed a prior sentence involving sexual offenses. He has completed both an ARD and a prior sentence successfully.

He has not participated in any sexual offenders programming. Again, it was suggested by Ms. Wagner that the victim's mother did discuss with him the opportunity to get help, and he did not desire to get help regarding these circumstances when she learned of the offense.

In terms of his age. He is now 35 years old – or 34 and the victim was 9 years old at the time of the offense. There was a significant age disparity between the victim and her father.

[Appellant] does not indicate that he was under the influence at the time of these offenses and, therefore, that's not a relevant consideration. He did not make any disclosures to his expert Mr. Reilly that he was under the influence of anything also.

And mental illness, mental disability or mental abnormality. Again, given the diagnosis that the conduct or behavior before it was discovered lasted at least seven months, the diagnostic criteria for pedophilia is met.

In terms of the behavioral characteristics that contributed to the offenders' conduct, he's the victim's biological father. He had a relationship of trust as a father, he exploited this trust in beginning improper sexual conduct with the child. Then he told the child that he would – she was threatened that she needed to keep this abuse a secret. And then he also attempted to pay the mother for her silence.

In terms of additional factors, it's reasonable to consider that [Appellant] demonstrated sexual arousals to young children, as the victim in this case was 9 at the time of victimization.

Next, the Court examines the mental personality disorder criteria. And by mental personality disorder, the Court , again, must construe this as the law has construed this [as] statutory criteria in that regard. The individual has a congenital or acquired condition which is the impetus to the sexual offending. In this case, [Appellant], by clear and convincing evidence, meets the diagnosis criteria for pedophilia.

Second, the individual suffers from a lifetime condition. The diagnostic criteria for pedophilic disorder are intended to apply both to individuals who freely disclose this pedophilia and to individuals who deny it. So again, to look at the diagnostic criteria, did the behavior exist for over six months? Yes. The testimony is uncontroverted from both Mr. Reilly and Ms. Wagner in that regard.

Has the person acted on sexual acts or engaged in sexual acts? In this case, yes. He acted on sexual acts and sexual gratification in performing sexual acts on his daughter who is the person at least 16 years of age and is a child at least 5 years younger. In this case, the child was 9, [Appellant] was in his 30s.

Did the violation override the individuals' emotional or volitional control? Clearly, [Appellant] was aware that his behavior was criminal. He made multiple attempts to conceal the sexual urges. When he was questioned about the first act he did admit that he told the victim what he was doing was wrong. Yet, it continued for at least seven months. In terms of this behavior, knowing that it was wrong and criminal, his deviancy pedophilic arousals overrides his emotional and volitional control.

In terms of likelihood of reoffending. There's a question of re-offense. Certainly, there was a suggestion by Mr. Reilly that he is a low risk because he had an incest relationship. A low risk perhaps to society, but not a low risk to his daughter. That's really the concern of the Court today.

In terms of reoffending, there was a suggestion that sexual deviant pathways to sexually offending occurs by children who are available to be victimized. And in this case, availability to a

daughter living in the household certainly lends itself to the likelihood of reoffending.

The statute defines [SVP] as an act with a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization. In this case, we know that [Appellant] is the father of the victim. He had a trusted role as a father.

In order to address the sexual relationship, he initiated the sexual relationship, sustained the sexual relationship for over a period of seven months, promoted the relationship by threatening the victim to keep the molestation a secret, then set up additional opportunities to reoffend, it wasn't one time. Therefore, [Appellant's] behavior meets the statutory definition of [SVP] under the Act.

Again, on the basis of the information that was submitted and the uncontroverted testimony of the member of [the Board], the Court finds that [Appellant's] conduct meets the definition of [SVP] under the Act. Violence is not required to meet this definition.

N.T. at 51-58. Thereafter, the trial court proceeded to sentence Appellant to an aggregate term of two hundred and thirty months to four hundred and sixty months in a state prison.

On March 13, 2014, Appellant filed a notice of appeal. Upon receipt of the notice, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On April 3, 2014, Appellant filed a timely concise statement. On May 5, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following two issues for our review:

1. Did the Commonwealth prove all elements of the charges of aggravated indecent assault, indecent assault, and incest beyond a reasonable doubt, particularly since there was no

> testimony or other evidence that Appellant penetrated the victim's vagina or anus?
>
> 2. Did the Commonwealth prove by clear and convincing evidence that Appellant is a sexually violent predator?

Brief for Appellant at 8.

We begin with our respective standards of review for Appellant's two claims. With respect to a challenge to the sufficiency of the evidence, our standard of review is as follows:

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense[s] charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. Normally, evidence is deemed sufficient to support the underlying convictions if:
>
>> there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left for the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.
>
> The factfinder is free to believe all, part or none of the evidence, and the facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence.

***Commonwealth v. Magliocco***, 806 A.2d 1280, 1282 (Pa. Super. 2002) (citations and internal quotation marks omitted).

We review challenges to the sufficiency of the evidence offered by the Commonwealth in support of an SVP designation according to the following standards:

A challenge to a determination of SVP status requires us to view the evidence:

> [I]n the light most favorable to the Commonwealth. The reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. The clear and convincing standard requires evidence that is so clear, direct, weighty and convincing as to enable [the trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [at] issue.

*Commonwealth v. Plucinski*, 868 A.2d 20, 25 (Pa. Super. 2005) (internal citations and quotation marks omitted). The scope of review is plenary. *Commonwealth v. Brooks*, 7 A.3d 852 (Pa. Super. 2010). "[A]n expert's opinion, which is rendered to a reasonable degree of professional certainty, is itself evidence." *Commonwealth v. Fuentes*, 991 A.2d 935, 944 (Pa. Super. 2010) (*en banc*).

A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. *Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006). The reviewing court must examine all of the Commonwealth's evidence without consideration of its admissibility. *Commonwealth v. Baker*, 24 A.3d 1006, 1035 (Pa. Super. 2011). A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation, whereas a challenge to the admissibility of the expert's opinion and testimony is an evidentiary question which, if successful, can lead to a new SVP hearing.

*Commonwealth v. Prendes*, 2014 PA Super 151 at *14-15, ____ A.3d ____

(Pa. Super. 2014) (citations modified).

We have reviewed the record, the relevant transcripts, the arguments of the parties, and the applicable law. Having done so, and applying the above-quoted standards, we agree with the trial court's learned and

comprehensive analyses set forth in its Rule 1925(a) opinion, wherein that court determines that Appellant is not entitled to relief on either claim.[2] Hence, we adopt the trial court's May 5, 2014 opinion as our own, and affirm Appellant's judgment of sentence. A copy of the trial court's opinion is attached hereto for convenience.

Judgment of sentence affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014

_____

[2] We note that, in his brief, Appellant also challenges the sufficiency of the evidence presented at trial to prove that he was M.K.'s biological father for purposes of his incest conviction. **See** Brief for Appellant at 11-12. However, Appellant did not raise that specific sufficiency challenge in his Rule 1925(b) statement. Rather, in his statement, Appellant's sufficiency challenges related only to the proof of penetration that is required for each crime, including incest. Consequently, his sufficiency argument relating to his status as M.K.'s biological father is waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Elia**, 83 A.3d 254, 263 (Pa. Super. 2013).

IN THE COURT OF COMMON PLEAS OF
THE 37th JUDICIAL DISTRICT OF PENNSYLVANIA
WARREN COUNTY BRANCH
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA

vs.

CR 48 of 2013

JOSEPH R⬛⬛ W⬛⬛.

OPINION PURSUANT TO Pa.R.A.P 1925(a)

Defendant in the above captioned case, Joseph R⬛⬛ W⬛⬛ ("Appellant"), appeals from a verdict of guilty after jury trial, as well as a sexually violent predator ("SVP") determination made by this Court. Appellant filed a Notice of Appeal with this Court, and subsequently filed his Statement of Matters Complained of on Appeal. This opinion follows, pursuant to Pa.R.A.P. 1925(a).

The procedural history of this case can be briefly summarized as follows. On February 13, 2013 the Commonwealth charged Defendant with one (1) count "Involuntary Deviate Sexual Intercourse with a Child (hereinafter "IDSI") at 18 Pa.C.S.A. 3123(b), one (1) count "Aggravated Indecent Assault" at 18 Pa.C.S.A. 3125(a)(7), one (1) count "Indecent Assault" at 18 Pa.C.S.A. 3126(a)(7), and one (1) count of "Incest" at 18 Pa.C.S.A. 4302. On February 14, 2013, Appellant entered a plea of guilty to Count 2, Aggravated Indecent Assault, and the Commonwealth moved to *nolle prosqui* the remaining charges. On May 20, 2013, this Court ordered Appellant to undergo an assessment by the Sexual Offenders Assessment Board prior to sentencing on August 9, 2013. The Commonwealth filed "Notice of Intention to Seek Mandatory Sentencing" on June 18, 2013, however on July 18, 2013 Appellant moved to withdraw his guilty plea, and on July 22, 2013 this Court granted Appellant's motion. Appellant then filed a "Motion for Writ of Habeas Corpus" and a "Motion to Suppress Evidence" on July 26, 2013. Hearing on both motions occurred August 15, 2013, and this Court denied the motions. Jury

1

selection occurred August 30, 2013 and trial occurred on September 10, 2013. Following trial, the jury returned a verdict of 'guilty' on all counts. The Court then entered an order directing the Sexual Offender Assessment Board to perform an assessment on Appellant. The sexually violent predator determination hearing and sentencing occurred February 28, 2014. Following hearing, this Court determined, by clear and convincing evidence, that Appellant qualified as a sexually violent predator, and sentenced him in the aggregate to two-hundred thirty (230) months to four-hundred sixty (460) months in a State Correctional Institution. Appellant served "Notice of Appeal" on this Court March 13, 2014, and this Court issued an order to comply with Pa.R.A.P. 1925(b) on the same day. Appellant filed his "Statement of Matters Complained of on Appeal" on April 3, 2014. This opinion follows.

The facts of this case, proven at trial, are as follows. Affiant Detective Anthony Chimenti of the Warren Police Department responded to a report from the mother of the nine year-old female victim, M.K., around November of 2012. On numerous occasions between October, 2010 and October, 2011, Appellant, M.K.'s biological father, abused her at a duplex that her mother and Appellant shared in Warren, Pennsylvania. M.K. reported that Appellant touched her on her chest and between her legs, put his mouth on her 'chest and privates,' and touched her with his tongue on her 'privates'. Testimony at trial indicated that, during at least some of the episodes of abuse, Appellant removed the victim's clothes prior to abuse occurring. M.K. did not report the abuse because Appellant told her not to tell anybody about what happened, and M.K. first told her mother about the events following a move to Ludlow, Pennsylvania in October, 2012. In the course of an interview with the police, Appellant admitted that he had touched M.K. while she was showering, and that the incidents involving touching had occurred in the bedroom he shared with the victim's mother. Appellant also admitted during interviews with police that while the victim was naked he would touch the victim on the breast and vagina, and he also admitted that on at least one occasion he used his tongue on the victim. Pennsylvania State Trooper Eric Mallory, who conducted the interview, testified at trial that slight penetration occurred during this incident, as Appellant admitted to rubbing the opening of the victim's vagina.

Appellant raises two issues in his "Statement of Matters Complained of on Appeal." First, Appellant argues insufficiency of the evidence. Appellant contends that the charges of Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, and Incest all require some penetration within the sexual act. Appellant argues that there was no evidence presented at

2

190

trial that Appellant penetrated the victim, and therefore the evidence was insufficient to support a conviction on the above three charges.

## I. Sufficiency of Evidence to Sustain Verdict

Appellant first complains that the evidence presented at trial was insufficient to sustain a guilty verdict on some of the counts. As a preliminary matter, the Rules of Criminal Procedure indicate that "(A) A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged in one or more of the following ways: ... (2) a motion for judgment of acquittal at the close of all the evidence;" Pa. R. Crim. P. 606(a)(2). This threshold has been met, as following the Commonwealth resting its case the Appellant's Attorney, Assistant Public Defender Alan Conn, orally moved for acquittal on the Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, and Incest counts. Tr. of Trial, 9/10/13. 83-86. Therefore, as a preliminary matter, Appellant preserved this objection by moving at trial for a judgment of acquittal.

In relation to a claim that the evidence presented at trial was insufficient to sustain the verdict the standard to apply "is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt." *Comm. v. Feese*, 79 A.3d 1101, 1119 (Pa. Super. Ct. 2013) (quoting *Comm. v. Lambert*, 795 A.2d 1010, 1014-15 (Pa. Super. Ct. 2002)). Judgment of courts about the sufficiency of evidence should be highly deferential to the fact finder. *Feese*, 79 A.3d at 1119 (citing *Lambert*, 795 A.2d at 1014-15). In reference to the above standard the Superior Court in *Feese*, in quoting *Lambert*, indicated as follows:

> [W]e note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
> *Id.*

3

191

Courts of this Commonwealth have previously held that "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses." *Comm. v. Charlton*, 902 A.2d 554, 562, (Pa. Super. Ct. 2006) (quoting *Comm. v. Davis*, 650 A.2d 452, 455 (Pa. Super. Ct. 1994). If the factfinder could have reasonably determined from all of the evidence presented at trial that each required element of the offense charged had been established beyond a reasonable doubt by the Commonwealth, then the evidence is considered sufficient to support the factfinder's verdict. *Comm. v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. Ct. 2000) (citing *Comm. v. Wood*, 637 A.2d 1335, 1343 (Pa. Super. Ct. 1994)). Thus, while each element of the crime must be proven by the Commonwealth beyond a reasonable doubt, the Commonwealth need only do so with circumstantial evidence, and the conclusions of the fact finder must be given substantial deference.

Appellant claims that the evidence presented at trial by the Commonwealth was insufficient to sustain a conviction as to the counts of "Involuntary Deviate Sexual Intercourse with a Child", "Aggravated Sexual Assault," and "Incest." More specifically, Appellant argues that all of these crimes require the Commonwealth to prove, beyond a reasonable doubt, that some penetration occurred. First, Involuntary Deviate Sexual Intercourse with a Child is defined as follows: "A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b). "Deviate Sexual Intercourse means "sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, *however slight*, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. § 3101 (emphasis added). Aggravated Sexual Assault is defined as follows: "(a)... a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if: ... (7) the complainant is less than 13 years of age;..." 18 Pa.C.S. § 3125(a)(7). Finally, "(b) -- A person is guilty of incest of a minor... if that person knowingly marries, cohabits with or has sexual intercourse with a complainant who is an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood and: (1) is under the

4

age of 13 years..." 18 Pa.C.S. § 4302(b)(1). For the purpose of incest, the definition of 'sexual intercourse' has been held by the Superior Court to cross-reference to 18 Pa.C.S. § 3101. *Comm. v. Fouse*, 612 A.2d 1067, 1069 (Pa. Super. Ct. 1992) (holding that "the definition of sexual intercourse for purposes of the sexual offenses [at Chapter 31] is equally applicable to the crime of incest.") 18 Pa.C.S. § 3101 indicates that sexual intercourse means "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." Therefore, all of the offenses require penetration.

Courts of this Commonwealth have, in the past, held that oral contact with the female genitalia constitutes penetration for the purpose of IDSI. *Comm. v. Trimble*, 615 A.2d 48, 50 (Pa. Super. Ct. 1992) (citing *Comm. v. Ziegler*, 550 A.2d 567 (1988)). Indeed, in *Commonwealth v. Ortiz*, applying the definition of "penetration" in the context of rape to "penetration" in the context of IDSI, the Superior Court held that "entrance in the labia is sufficient: To constitute the crime of rape there must be penetration, however slight. (Res in re, but entrance in the labia is sufficient: 44 Am.Jur., Rape, § 3). *Comm. v. Ortiz*, 457 A.2d 559, 561 (Pa. Super. Ct. 1983) (citing *Comm. v. Bowes*, 74 A.2d 795, 796 (1950)) (internal quotations omitted).[1] Additionally, in citing *Commonwealth v. McIlvaine*, the Court in *Trimble* held that it is not required "that penetration reach the vagina or "farther reaches of the female genitalia . . . ." *Trimble*, 615 A.2d at 50. (citing *Comm. v. McIlvaine*, 560 A.2d 155, 159 (1989)). This definition of penetration has also been applied to Aggravated Indecent Assault, as charged in the present case. *Comm. v. Burns*, 988 A.2d 684, 694 (Pa. Super. Ct. 2009) (indicating that "testimony was also presented that the victim reported to the police that appellant licked her vagina several times. The evidence was sufficient to prove the "penetration, however slight" element of the crimes." (internal citations omitted)).

The testimony in this case allows for the finding of penetration by Appellant. As indicated above, MK indicated that Appellant had put his tongue on her "privates". Tr. of Trial, 9/10/14, 37-38. Appellant himself indicated, in an interview with the Pennsylvania State Police, that he did indeed use his tongue on the victim at least once.[2] Tr. of Trial, 9/10/14, 55-57. When

---

[1] For facts analogous to the case at bar, See *Comm. v. Hornberger*, 184 A.2d 276, 279, (Pa. Super. Ct. 1962) (stating "testimony of the prosecutrix that the appellant put his mouth on her vagina was sufficiently descriptive to establish the element of penetration. Furthermore, even if we were to assume that her testimony was not sufficiently definite on this point, it was sufficient evidence of the corpus delicti to allow the jury to consider the evidence of penetration contained in the defendant's confession as testified to by the detective.")

[2] While Appellant vehemently denied to Pennsylvania State Trooper Mallory that any penetration had occurred, this court believes that the Appellant was referring to a colloquial meaning of the word 'penetration,' rather than its more

5

the proper deference is given to the factfinder to make its determination, it is clear to the Court that the Commonwealth has proven its case beyond a reasonable doubt.

## II. Sexually Violent Predator Determination

Second, Appellant argues that the Commonwealth failed to prove at hearing, by clear and convincing evidence that Appellant qualifies as a sexually violent predator. Appellant contends that the following factors lead to a conclusion contrary to this Court's determination:

> a. The defendant had no prior convictions for sexual offenses, and the defendant was 34 years old at the time of sentencing.
> b. The crime only involved one victim.
> c. The defendant did not display any unusual cruelty in the commission of the offense.
> d. The defendant did not exceed the means necessary to achieve the offense.
> e. The defendant did not provide any illegal drugs to the victim.
> f. The victim in this case was not a stranger to the defendant.
> g. The victim had no mental limitations that increased her vulnerability.
> h. The defendant has no prior history of violence in crimes.
> i. The defendant has not received sexual offender counseling at this point and there is no indication he would not be amenable to such treatment.

Appellant's Concise Statement, 4/3/14, 1-2.

In addition, Appellant argues that at the SVP hearing, defense counsel presented an expert, licensed clinical psychologist Steven Reilley, who specifically rebutted the Commonwealth's expert, Pennsylvania Sexual Offender's Assessment Board member Molly Wagner. Appellant claims that his expert was able to interview him, and determined that he did not qualify as a SVP. Finally, Appellant claims that the Commonwealth's expert had some errors in her report, and based some of her evaluation on information that was not testified to at trial, and for which there was no proof.

When a Defendant has been convicted of certain sex crimes[3] in Pennsylvania, a SVP assessment must be undertaken by the Court prior to sentencing. 42 Pa.C.S. § 9799.24(a).

---

precise, legal definition in the context of a sexual assault. However, this was a point presented to the factfinder to weigh nonetheless.

[3] 42 Pa.C.S.A. § 9799.12 defines a "sexually violent offense" as "An offense specified in section 9799.14 (relating to sexual offenses and tier system) as a Tier I, Tier II or Tier III sexual offense." All four crimes for which Appellant

6

Following conviction, the sexual offender's assessment board conducts an assessment on the defendant to determine if they qualify as an SVP. 42 Pa.C.S. § 9799.24(b). Under the statute:

The assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:
   (i) Whether the offense involved multiple victims.
   (ii) Whether the individual exceeded the means necessary to achieve the offense.
   (iii) The nature of the sexual contact with the victim.
   (iv) Relationship of the individual to the victim.
   (v) Age of the victim.
   (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
   (vii) The mental capacity of the victim.
(2) Prior offense history, including:
   (i) The individual's prior criminal record.
   (ii) Whether the individual completed any prior sentences.
   (iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
   (i) Age of the individual.
   (ii) Use of illegal drugs by the individual.
   (iii) Any mental illness, mental disability or mental abnormality.
   (iv) Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b)(1)-(4).

Following hearing, the Commonwealth must prove, by clear and convincing evidence, that the convicted defendant qualifies as a sexually violent predator. 42 Pa.C.S. § 9799.24(e)(3). "Sexually Violent Predator" is statutorily defined as "...an individual convicted of an offense specified in: [...] (3) section 9799.14(d) [...] who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. The statute further defines 'mental abnormality' as "a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and

---

was convicted are sexually violent offenses under 42 Pa.C.S. 9799.14, and are all "Tier III" crimes as defined in 42 Pa.C.S. 9799.14(d).

7

safety of other persons." *Id.* Additionally the statute defines 'predatory' as "an act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* In the context of a SVP hearing, the Pennsylvania Supreme Court has defined 'clear and convincing evidence as "evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Comm. v. Lee,* 935 A.2d 865, 883 (Pa. 2007) (citing *Comm. v. Maldonado,* 838 A.2d 710, 715 (Pa. 2003)). In reviewing the statutory factors contained at 42 Pa.C.S. § 9799.24(b)(1)-(4) (and reproduced above), a determining court should find no factor dispositive and the factors do not constitute a checklist; rather, all of the factors will weigh against one another in making a determination of SVP status. *Comm. v. Feucht,* 955 A.2d 377, 381 (Pa. Super. Ct. 2008) (citing *Comm. v. Meals,* 912 A.2d 213, 220-23, (Pa. 2006)). Therefore, the hearing court must determine "whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses." *Feucht,* 955 A.2d at 381.

In reviewing a decision on SVP status made by a Common Pleas court, an appellate court "will reverse [the decision] only if the Commonwealth has not presented clear and convincing evidence sufficient to enable the trial court to determine that each element required by the statute has been satisfied." *Comm. v. W.H.M.,* 932 A.2d 155, 164 (Pa. Super. Ct. 2007) (citing *Comm. v. Krouse,* 799 A.2d 835, 838 (Pa. Super. Ct. 2002)), and will view the evidence in the light most favorable to the Commonwealth. *W.H.M.,* 932 A.2d at 164.

In Appellant's Concise statement, he presents the factors of the SVP statutes, reproduced above, that he contends do not apply to his situation. However, as indicated above, the Court need not examine the factors as a "checklist," but rather the factors will be taken together and weighed against one another to come to a conclusion. *Feucht,* 955 A.2d at 381. Appellant has stated nine factors contained in the statute that weigh against a finding of SVP status. However, there are a total of 14 factors contained in the statute, as well as a catch-all category. See 42 Pa.C.S. § 9799.24(b)(1)-(4). The Court considered these factors, along with the other factors in the statute, when making a determination on Appellant's SVP status. In addition, the Court considered the expert opinions from both the Commonwealth's expert, as well as the expert presented by Appellant. The Commonwealth's expert determined that Appellant qualified as a

8

SVP, whereas Appellant's expert came to a contrary conclusion. This Court, as factfinder in this hearing, considered all of the evidence presented at the hearing, including the reports of both experts and determined that the Commonwealth had met its burden and proved, by clear and convincing evidence, that Appellant was an SVP.

Appellant has also raised several factors, besides the statutory factors, that he believes should lead to his status being reversed. First, Appellant argues that he presented an expert that directly contradicted the evidence presented by the Commonwealth's Sexual Offender's Board (hereinafter "SOB") expert. As indicated above, in its role as factfinder the Court considered all of the evidence presented to it in making its determination as to Appellant's SVP status. In addition, Appellant indicates that the Commonwealth's expert report contained some errors, which Appellant pointed out to this Court at the hearing. Both of these statements are correct, however, they were non-determinative in the context of this Court's decision.

First, the factfinder is obligated to look to the fact and circumstances, and make a determination of SVP status based on whether or not the Commonwealth has presented clear and convincing evidence that the offender qualifies as an SVP. *W.H.M.*, 932 A.2d at 164. As factfinder, this Court was "free to believe all, part or none of the evidence presented." *Comm. v. Lipphardt*, 841 A.2d 551, 555 (Pa. Super. Ct. 2004) (citing *Krouse*, 799 A.2d at 838). This Court chose, as it is entitled to do as factfinder, to believe as more convincing, the testimony of the Commonwealth's expert. Both the errors contained in the Commonwealth expert's report and the fact that Appellant presented his own expert were issues for the factfinder to weigh in the totality with all of the other evidence presented at hearing, and not issues of independent significance. It was fully within the providence of the factfinder, in this case this Court, to give them as much or as little consideration as it deemed appropriate. This Court in fact considered these issues when making its determination. Ultimately this Court placed a substantial finding on the record at the conclusion of the SVP hearing on February 28, 2014 and concluded that the Commonwealth proved Appellant's SVP status by clear and convincing evidence. Tr. of SVP Hearing, 2/28/14, 51-58.

Appellant also claims that the opinions of the Commonwealth's expert were less credible because she did not interview Appellant prior to completing her assessment, and that his expert should be believed because he took the opportunity to interview Appellant during his assessment. Again, it is well within the providence of the factfinder to believe some, all, or none of the

9

197

evidence. *Lipphardt*, 841 A.2d at 555. Further, the Commonwealth's expert indicated that she requested that the Appellant participate in the interview process, but that he failed to comply. Therefore, Appellant was presented with the opportunity to have himself examined by the Commonwealth's expert, but failed to take advantage of that opportunity. However, the Appellant did take advantage of the opportunity to meet with his own expert. Thus, for Appellant to claim that his expert is to be believed because his expert interviewed him is disingenuous at best. The Appellant cannot claim on the one hand the fact his own expert interviewed him weighs in his favor, while at the same time denying the Commonwealth the same opportunity.

Finally, Appellant argues that the Commonwealth's expert used information from the Criminal complaint during her evaluation that was not admitted or used at trial, and that there were several errors contained in the expert's report. As to the errors contained in the report, Appellant's Counsel raised at hearing that Appellant's birthdate was April 7, 1974, rather than April 7, 1979 as contained in the report. However, as indicated by the witness, the error was of no import as what matters in this circumstance was that there was a five year age difference between the victim and Appellant, and whatever date is used that difference remains over five years. Tr. of SVP Hearing, 2/28/14, 26-27. Therefore, this Court determined the error not dispositive of the expert's finding. Also, it is unclear to this Court, from the testimony and transcript of the hearing, what specific information Appellant is referring to when he indicates that the Commonwealth's expert relied on information not proven at trial. This Court assumes appellant refers to testimony that Appellant took his daughter into the basement to perform the sexual acts, and that Appellant threatened the victim to not tell anyone that the abuse that occurred. While Appellant may challenge the admissibility of evidence at his SVP hearing, *Comm. v. Baker*, 24 A.3d 1006, 1034 (Pa. Super. Ct. 2011) (quoting *Comm. v. Sanford*, 863 A.2d 428, 431-432 (Pa. 2004)), the issue surrounding whether any incidents occurred in the basement was established by the victim's testimony at time of trial. Tr. of Trial, 9/10/13, 34-35. This testimony is sufficient to allow this Court (and by extension the expert) to consider that fact in evaluating Appellant. Additionally, the Court heard testimony where the victim could not remember whether she was specifically threatened, but she did testify that Appellant told her to not tell anyone about the abuse that occurred. Tr. of Trial, 9/10/13, 45-46. Indeed, Appellant's counsel never objected at hearing to this testimony, nor did counsel object to the expert's report. Rather, he chose to raise the issue on cross-examination.

198

No further opinion of this Court shall issue.

Maureen A. Skerda, President Judge

May 5, 2014

2014 MAY -5 AM 9:34
WARREN COUNTY
PROTHONOTARY/
CLERK OF COURTS
FILED

11

199